NO. 14-1544

In The

# United States Court of Appeals
### For The Fourth Circuit

**GE ZHANG a/k/a Emily Zhang,**

*Plaintiff-Appellant,*

**v.**

**PROMONTORY INTERFINANCIAL NETWORK, LLC**

*Defendant-Appellee.*

**On Appeal from the United States District Court
for the Eastern District of Virginia
(The Honorable Liam O'Grady)**

## RESPONSE BRIEF OF APPELLEE

**PROMONTORY INTERFINANCIAL NETWORK, LLC**

**Thomas S. Williamson Jr.**
**Eli K. Best**
**COVINGTON & BURLING LLP**
**1201 Pennsylvania Ave, NW**
**Washington, DC 20004-2401**
**Phone: (202) 662-6000**
**Fax: (202) 662-6291**
**twilliamson@cov.com; ebest@cov.com**

*Attorneys for Appellee*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and the Fourth Circuit's Local Rules of Appellate Procedure, Appellee Promontory Interfinancial Network, LLC ("PIN"), makes the following disclosures:

1.      PIN is owned by its two members, which are Promontory ADN, LLC ("ADN"), and MCDI (Holdings), LLC ("MCDI").  ADN is owned by its individual founders.  MCDI is a wholly-owned subsidiary of The Bank of New York Mellon Corporation.

2.      The Bank of New York Mellon Corporation, a publicly held corporation, indirectly owns more than 10% of PIN through its wholly-owned subsidiary, MCDI.

3.      No other publicly held corporation has a direct financial interest in the outcome of this litigation by reason of a franchise, lease, other profit sharing agreement, insurance, or indemnity agreement.

4.      There are no similarly situated master limited partnerships, real estate investment trusts, or other legal entities whose shares are publicly held or traded.

5.      PIN is not a trade association.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ....................................................... i

ISSUES PRESENTED ................................................................................... 1

STATEMENT OF THE CASE ........................................................................ 2

    A.    Background ................................................................................ 2

    B.    The Litigation ........................................................................... 4

        1.    Complaint One ............................................................... 4

        2.    Complaint Two ............................................................... 7

        3.    Complaint Three ............................................................. 9

        4.    Complaint Four ............................................................ 10

        5.    Complaint Five ............................................................. 11

        6.    The District Court's Decision ....................................... 11

SUMMARY OF ARGUMENT ....................................................................... 13

ARGUMENT ............................................................................................... 16

I.    The District Court Properly Granted PIN'S Motion To Strike Zhang's
Discrimination and Hostile Work Environment Claims (Counts I-III),
and Zhang Forfeited the Right To Challenge This Decision....................... 16

II.    The District Court Properly Granted PIN's Motion To Dismiss
Zhang's Retaliation Claims (Counts IV and V) .......................................... 19

    A.    The District Court Properly Considered Zhang's Prior Filings in
Assessing the Plausibility of Zhang's Allegations............................ 22

    B.    Zhang Did Not Plausibly Allege That She Engaged in Protected
Activity by Complaining about Unlawful Discrimination................. 28

    C.    Zhang Did Not Plausibly Allege that She Possessed an
Objectively Reasonable Belief that PIN Had Acted Unlawfully....... 32

D.      Zhang Did Not Plausibly Allege that Purported Protected
        Activity Was the But For Cause of Her Termination ........................ 38

E.      Zhang's Additional Retaliation Claims Exceeded the Limited
        Scope of the Leave to Amend and Also Fail as a Matter of Law
        on the Merits ................................................................................. 43

III.    The District Court Properly Denied Zhang's Motion for Leave To File
        a Second Amended Complaint ..................................................................... 49

A.      Bad Faith ........................................................................................ 51

B.      Repeated Failure To Cure the Complaint's Deficiencies................... 52

C.      Prejudice ........................................................................................ 53

D.      Futility ........................................................................................... 54

CONCLUSION .......................................................................................................... 57

ORAL ARGUMENT ................................................................................................. 57

CERTIFICATE OF COMPLIANCE ........................................................................ 58

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Angles v. Dollar Tree Stores, Inc.*,
  494 F. App'x 326 (4th Cir. 2012) ................................................................18, 55

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................*passim*

*Bass v. E.I. DuPont de Nemours & Co.*,
  324 F.3d 761 (4th Cir. 2003) ...........................................................20, 35, 56, 57

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................*passim*

*Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*,
  369 F.3d 212 (2d Cir. 2004) .............................................................................23

*Bonds v. Leavitt*,
  629 F.3d 369 (4th Cir. 2011) .............................................................................37

*Bradley v. Chiron Corp.*,
  136 F.3d 1317 (Fed. Cir. 1998) ....................................................................24, 27

*Burlington N. & Santa Fe Ry. Co. v. White*,
  548 U.S. 53 (2006) .......................................................................................46, 47

*Clark Cnty. Sch. Dist. v. Breeden*,
  532 U.S. 268 (2001) ......................................................................................33, 34

*Coleman v. Md. Court of Appeals*,
  626 F.3d 187 (4th Cir. 2010), *aff'd*, 132 S. Ct. 1327 (2012)..................19, 20, 35

*Conley v. Gibson*,
  355 U.S. 41 (1957).............................................................................................21

*Cook v. Nationwide Ins. Co.*,
  962 F. Supp. 2d 807 (D. Md. 2013)...................................................................18

iv

*Faragher v. City of Boca Raton*,
　524 U.S. 775 (1998).................................................................34

*Foman v. Davis*,
　371 U.S. 178 (1962)........................................................50, 51, 53

*Francis v. Giacomelli*,
　588 F.3d 186 (4th Cir. 2009) ...................................................21

*Glover v. S.C. Law Enforcement Div.*,
　170 F.3d 411 (4th Cir. 1999) ...................................................19

*Hawkins v. PepsiCo, Inc.*
　203 F.3d 274, 277 (4th Cir. 2000) ...........................................36

*In re Total Realty Mgmt., LLC*,
　706 F.3d 245 (4th Cir. 2013) ...................................................46

*Jordan v. Alternative Res. Corp.*,
　458 F.3d 332 (4th Cir. 2006) ..............................................19, 32

*Keller v. Prince George's Cnty.*,
　923 F.2d 30 (4th Cir. 1991) .....................................................49

*Laber v. Harvey*,
　438 F.3d 404 (4th Cir. 2006) ..............................................50, 51

*Li v. Gonzales*,
　405 F.3d 171 (4th Cir. 2005) ...................................................17

*Lolavar v. de Santibanes*,
　430 F.3d 221 (4th Cir. 2005) ...................................................23

*McDonnell Douglas Corp. v. Green*,
　411 U.S. 792 (1973).................................................................20

*McLean v. United States*,
　566 F.3d 391 (4th Cir. 2009) ...................................................53

*Philips v. Pitt Cnty. Mem'l Hosp.*,
　572 F.3d 176 (4th Cir. 2009) ...................................................23

v

*Proud v. Stone*,
  945 F.2d 796 (4th Cir. 1991) ...........................................................56

*Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.*,
  227 F. App'x 239 (4th Cir. 2007) ....................................................17

*Republican Party of N.C. v. Martin*,
  980 F.2d 943 (4th Cir. 1992) ...........................................................45

*Scott v. Family Dollar Stores, Inc.*,
  733 F.3d 105 (4th Cir. 2013) ....................................................49, 51

*Seay v. Tenn. Valley Auth.*,
  339 F.3d 454 (6th Cir. 2003) ...........................................................18

*Simpson v. Welch*,
  900 F.2d 33 (4th Cir. 1990) .............................................................56

*Staley v. Gruenberg*,
  __ F. App'x __, 2014 WL 2535403 (4th Cir. June 6, 2014) ............41

*Stanbury Law Firm v. IRS*,
  221 F.3d 1059 (8th Cir. 2000) (per curiam) ...................................17

*Swierkiewicz v. Sorema N.A.*,
  534 U.S. 506 (2002) ........................................................................20

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ........................................................................23

*United States v. Al-Hamdi*,
  356 F.3d 564 (4th Cir. 2004) ...........................................................17

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
  133 S. Ct. 2517 (2013) ........................................................38, 40, 41

*Veney v. Wyche*,
  293 F.3d 726 (4th Cir. 2002) .....................................................22, 23

**Statutes**

42 U.S.C. § 1981 ...................................................................*passim*

42 U.S.C. § 2000e-3(a) ...........................................................19, 28, 46

vi

42 U.S.C. §2000e-5(f)(1) ..................................................................55

**Rules**

Fed. R. Civ. P. 8 ...............................................................................32

Fed. R. Civ. P. 11 ..............................................................11, 25, 26

Fed. R. Civ. P. 12(b)(6) ...............................................................24, 45

Fed. R. Civ. P. 12(f) .......................................................................17, 18

Fed. R. Civ. P. 15(a) ......................................................................18, 50

Fed. R. Civ. P. 15(a)(2) .........................................................................50

**Other Authorities**

6 Wright & Miller, Fed. Prac. & Proc. § 1476 (3d ed.) ..........................24

## ISSUES PRESENTED

I.      Whether the District Court abused its discretion in striking Zhang's discrimination and harassment claims (Counts I-III), which Zhang filed without leave (mentioned, but not argued, in Zhang's brief).

II.      Whether the District Court properly dismissed Zhang's retaliation claims (Counts IV-V), including:

   II-A.   Whether the District Court was entitled to consider prior versions of Zhang's complaint (Zhang's Issues I and VII);

   II-B.   Whether the District Court properly concluded that Zhang failed to correct deficiencies in her retaliation claims arising from the alleged meeting of February 13, 2013 (Zhang's Issues II, IV, V);

   II-C.   Whether the District Court properly dismissed Zhang's "participation clause" retaliation claims, where Zhang added those claims without leave and the claims do not allege conduct that constitutes adverse action (Zhang's Issue III).

III.      Whether the District Court abused its discretion in denying Zhang's motion for leave to amend after finding, among other things, that Zhang had acted in bad faith (Zhang's Issue VI).

1

## STATEMENT OF THE CASE

Over the course of this litigation, appellant Ge (Emily) Zhang ("Zhang") has submitted five versions of her complaint against appellee Promontory Interfinancial Network, LLC ("PIN"), and has been assisted by two different attorneys.  Zhang's first complaint in the instant action was dismissed with leave to amend.  Shortly before the deadline for filing an amended complaint, Zhang terminated the services of her first attorney, who sought, and was granted, permission to withdraw.  Zhang then filed an amended complaint *pro se*, followed two weeks later by a "corrected" version.  After briefing and a hearing, the District Court granted PIN's motion to strike and dismissed the complaint with prejudice, finding that Zhang had "perpetrate[d] an outrageous fraud upon the court."  J.A. at 194.  The District Court also denied Zhang's motion for leave to amend her complaint yet again.  This appeal followed.

### A.    Background

For convenience and clarity, PIN refers to Zhang's complaints as follows:

| Complaint One | filed in state court on March 18, 2013 |
|---|---|
| Complaint Two | first complaint in the instant action, filed on October 17, 2013 |
| Complaint Three | amended complaint of February 14, 2014 |
| Complaint Four | "corrected" amended complaint of February 28, 2014 |
| Complaint Five | proposed second amended complaint of April 20, 2014 |

2

Except as otherwise stated, PIN refers to Zhang's allegations as set forth in Complaint Three (her first amended complaint in this action).

According to Zhang, she was a "Senior User Experience Consultant" to PIN for approximately four months, from November 1, 2012, to February 25, 2013. J.A. at 79.  Zhang's immediate supervisor was Mary Lynn Wilhite, Senior Web Development Manager.  *Id.* at 79.  Zhang was engaged by PIN through TrustedQA, Inc. ("TrustedQA"), and did not work directly for PIN.  *Id.* at 87.

"On or around January 28, 2013," Zhang met with "PIN management" to discuss a change from consultant status to employee status and was advised that the terms of an agreement "would be memorialized in an offer letter which would be prepared over the next few days."  *Id.* at 83.  However, Zhang acknowledges that, "[j]ust a few days later," at the beginning of February, she was called into a meeting with PIN's Chief Administrative Officer ("CAO"), who informed her that her comments in a meeting could have "hurt other people's feelings," that "there had been reports of communication problems between [Zhang] and the marketing team," and that she would not receive an employment offer unless her communication problems improved.  *Id.* at 83-84.

Although Zhang's five complaints give different factual accounts, a common thread is Zhang's claim that she had a strained relationship with her supervisor, Wilhite, and with one of PIN's business analysts, Jessica McDaniel.  Complaint

3

Three, altering the account in Complaint One, alleged that Zhang complained to Joanne Talbot, PIN's Human Resources ("HR") Director, on February 13, 2013, that she was being discriminated against and harassed. *Id.*

On February 25, 2013, PIN terminated Zhang, giving her one month's notice. *Id.* at 85. When PIN learned that Zhang was printing excessive material later that day, PIN had Trusted QA inform Zhang that she should leave at the end of the day and not return, rather than working for one more month. *Id.* at 85-86. Nevertheless, Zhang was paid for one more month. *Id.* at 88 ("Following her termination from employment, the Plaintiff received notice pay through 3/25/13.").

### B.    The Litigation

#### 1.    Complaint One

On March 18, 2013, Zhang filed a 6,000-plus word *pro se* complaint in Virginia state court against PIN and PIN employees Wilhite, McDaniel, and Talbot. J.A. at 11. Complaint One asserted causes of action for discrimination and harassment in violation of Title VII and state law claims of conspiracy and fraud. *Id.* at 21-23. It also asserted a retaliation claim, although not in a separate count. *Id.*at 21. On March 19, 2013, Zhang filed a charge with the Equal Opportunity Employment Commission ("EEOC") with similar content. *Id.* at 38.

In Complaint One, Zhang described what she perceived to be Wilhite's and McDaniel's incompetence. According to Zhang, Wilhite was unable to identify a

4

solution that "is really nursery level in the development world," and McDaniel

"didn't know what she was doing most of the times." *Id.* at 16, 18. Complaint

One further alleged that, in correcting Wilhite's alleged errors, Zhang might have

provoked Wilhite's hostility by "unintentionally hurt[ing] Ms. Wilhite's super ego

and power play." *Id.* at 16.

Complaint One stated that Wilhite "had the personal motive for conspiring

to cause Ms. Zhang's termination because Ms. Wilhite treated Ms. Zhang as her

risky competitor/threat as her job position." *Id.* at 23. Whereas Zhang was an

"expert" with "well-rounded skills and experiences in development," Wilhite, the

complaint said, "ha[d] none of these." *Id.* at 24. Wilhite allegedly "treated Ms.

Zhang as a dangerous risk to her own job position," and it was "[t]herefore" that

Wilhite "conspired" with McDaniel against Zhang, which "led to" Zhang's

termination. *Id.* According to Complaint One, McDaniel "had the personal motive

to join Ms. Wilhite's conspiracy because Ms. Wilhite was Ms. McDaniel's direct

manager." *Id.*[1]

Complaint One comprehensively described alleged slights Zhang suffered,

such as that Wilhite once "went to [Zhang's] desk in a very irritating facial

expression," that she once "questioned Ms. Zhang madly that why Ms. Zhang

---

[1] Complaint One, noting that "Ms. McDaniel is Korean American," stated that McDaniel participated in Wilhite's "conspiracy" because McDaniel could reap "tremendous personal benefits from job performance review, bonus, credit, and job recognition." J.A. at 21, 24.

didn't answer her call and voice messages [Wilhite] left for her," that she once "quickly dismissed" Zhang's suggestion about a "usability issue," and that she did not invite Zhang to important meetings.  *Id.* at 14-18.  Zhang also claimed that she had to work overtime "even during the Christmas and New Year holidays in order to catch Ms. Wilhite's almost impossible deadlines."  *Id.* at 15.

Complaint One asserted that, as a result of her personal conflicts with Wilhite and McDaniel, Zhang "was pushed in a corner of a intensively tortious hostile working environment."  *Id.* at 18.  Complaint One then alleged that Zhang met with Talbot, PIN's HR Director, on February 13, 2013, and "addressed the issues about Ms. Wilhite and Ms. McDaniel for the first time and hope her hostile work environment would become better."  *Id.*

Complaint One did not allege that Zhang said anything to HR Director Talbot about alleged discrimination at the February 13 meeting, and its description of her alleged personal conflict with Wilhite and McDaniel contained no mention of Zhang's national origin or race.  According to Complaint One, the only time that anyone at PIN mentioned Zhang's national origin or race was on February 25, 2013, when Zhang herself allegedly mentioned it after she was told her services were being terminated.  *Id.* at 20.[2]

---

[2] After informing Zhang of the termination, the HR Director allegedly said that Zhang had a "culture problem."  J.A. at 20.  Allegedly, Zhang responded, "Culture problem?  I'm Chinese?" and "Ms. Talbot didn't answer the question . . . ."  *Id.*

PIN removed the state-court action to federal court and filed a motion to dismiss. *Id.* at 2. After PIN's motion was fully briefed, Zhang moved to dismiss Complaint One voluntarily without prejudice, and the District Court granted the motion. *Id.* at 3-4, 28-29.

### 2.     Complaint Two

On August 27, 2013, the EEOC dismissed Zhang's charge and issued a "Notice of Suit Rights," which required that Zhang assert any Title VII claims within 90 days. J.A. Ex. at 35. The EEOC stated that, "[b]ased upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes." *Id.*[3]

Subsequently, Zhang engaged her first attorney and commenced the instant action by filing Complaint Two on October 17, 2013. J.A. at 39. Complaint Two dropped all claims that Zhang actually experienced discrimination or harassment. *Id.* at 45-48. Instead, it asserted only three claims: retaliatory termination in violation of Title VII (Count I), retaliatory termination in violation of 42 U.S.C. § 1981 (Count II), and tortious interference with contract (Count III). *Id.* The retaliation claims arose entirely from Zhang's alleged complaint to PIN's HR Director on February 13, 2013. *Id.* at 45-47.

---

[3] The EEOC also stated: "No Employee/Employer Relationship." J.A. Ex. at 35.

7

Complaint Two deleted Complaint One's exhaustive description of a personal conflict with Wilhite and McDaniel. *Compare id.* at 40-43 (Complaint 2), *with id.* at 13-20 (Complaint 1). It also altered Zhang's account of the February 13 meeting by asserting that Zhang, at the meeting, "lodged a complaint of *discrimination* and hostile working environment against [Wilhite] and a co-worker *based upon the Plaintiff being Chinese/Asian.*" *Id.* at 41 (emphasis added).

PIN again moved to dismiss, asserting that the new allegation about the February 13 meeting, especially in light of the changed factual account, was conclusory. *See* Civ. No. 13-1309, Docket No. 4 at 8-11. PIN also pointed out that Zhang's attorney-drafted Complaint Two failed to allege that Zhang's belief that illegal conduct had occurred was objectively reasonable, which is a requirement for retaliation claims, and asserted that Zhang's retaliation claims also failed with respect to causation. *Id.* at 12-15.

After briefing and a hearing, the District Court dismissed Zhang's tortious interference claim with prejudice and dismissed the retaliation claims, but without prejudice. J.A. at 75.[4] The Court granted Zhang "30 days to amend Counts 1 and 2"—the retaliation claims based on the February 13 meeting and February 25 termination—and instructed Zhang and her counsel to determine whether Zhang

---

[4] Although Complaint Two was filed by counsel, the Court stated: "I . . . am very mindful of the Fourth Circuit's position that especially Ms. Zhang, having begun the case *pro se*, that there should be opportunity to amend, and to give the give the plaintiff every opportunity to plead the complaint legitimately." J.A. at 73.

could legitimately plead facts that could support these claims. *Id.* at 72-74; *see also id.* at 75. Zhang had not requested leave to amend her complaint in any other respect, and no leave to amend in any other respect was granted.

Zhang continued to be represented by counsel for several weeks following the hearing of January 17, 2014. However, on February 12, Zhang terminated her attorney's services, and he filed a motion for leave to withdraw, which the District Court granted. *Id.* at 33, 76-77.

### 3.    Complaint Three

On February 14, 2014, two days after terminating her attorney, Zhang filed another *pro se* complaint. Complaint Three introduced entirely new alleged instances of "protected activity" and "adverse employment actions" and sought to raise three new claims: (1) discrimination in violation of Title VII (Count I); (2) discrimination in violation of Section 1981 (Count II); and (3) hostile work environment in violation of Title VII (Count III). J.A. at 88-101.

Complaint Three also included two significant new allegations. First, although Complaint One and Zhang's EEOC submission, written less than one month after her termination, described numerous slights she claimed to have encountered—including alleged occasions on which Wilhite looked "irritated," sounded "mad," or too quickly "dismissed" an idea of Zhang's—without mentioning any derogatory statements about national origin or race, and although

9

the attorney-drafted Complaint Two also mentioned no such statements, Complaint Three alleged for the first time that Wilhite "frequently gave negative comments, in front of the Plaintiff, about Chinese people and Chinese restaurants, food, etc." *Id.* at 81. According to this new allegation, Wilhite "commented the Chinese people were rude, dumb, and the Chinese places like restaurants were always so dirty . . ." *Id.* (ellipsis in original).

Second, Complaint Three alleged for the first time that, in retaliation for Zhang's first civil action, PIN had filed a criminal charge against her. *Id.* at 86-87, 95, 98. Zhang purported to know not only that PIN had filed the criminal charge, but also (1) the date on which the charge was filed; (2) the disposition of the charge; (3) the name of the authority that denied the criminal charge; and (4) the reason that the authority denied the charge. *Id.* at 86-87, 98.

Complaint Three also reinstated the allegation from Complaint One that Zhang had been forced to work overtime "on Christmas, New Year Day." *Id.* at 91; *see also id.* at 80.

### 4.    Complaint Four

On February 28, 2014, without having sought or obtained leave to amend, Zhang submitted a "notice of correction" with a further revised version of her complaint. J.A. at 104. One of the changes in Complaint Four was to delete the

10

allegation—which had appeared in Complaints One and Three—that Zhang had been forced to work overtime on Christmas and New Year's. *Id.*

### 5.    Complaint Five

On March 4, 2014, PIN moved to dismiss Zhang's amended complaint and to strike the new claims and allegations. J.A. at 33. Shortly thereafter, Zhang retained her current counsel, who entered a notice of appearance on March 6, 2014. *Id.* On April 1, 2014, after expiration of the Rule 11 "safe harbor" period, PIN filed a motion for sanctions relating to the new allegations of derogatory statements and a criminal charge. J.A. at 34; *see* Civ. No. 13-1309, Docket No. 38 at 1.

On April 20, 2014, after PIN's motion to dismiss was fully briefed, Zhang's attorney sought to amend Zhang's complaint again, attaching a proposed second amended complaint (Complaint Five). J.A. at 35. Complaint Five deleted the allegation—which was one of the subjects of PIN's pending Rule 11 motion—that PIN had filed a criminal charge against Zhang and replaced it with an allegation that PIN's outside counsel had only threatened Zhang with criminal prosecution. *Id.* at 145.

### 6.    The District Court's Decision

On May 9, 2014, the District Court held a hearing on PIN's motion to dismiss, Zhang's motion for leave to amend, and cross-motions for sanctions that

11

are not at issue in this appeal.  J.A. at 165-95.  The Court concluded the hearing by

explaining that Zhang was given ample opportunity to put forward a viable case,

and not only failed to do so, but also acted in bad faith:

> I have bent over backwards to allow Ms. Zhang the
> opportunity to come forward with anything beyond pure
> speculation . . . and to demonstrate that there was
> retaliation or harassment.
>
> She was pro se when she started, then she had counsel.
> We went over it with counsel.  And instead of
> counseling, which would have demonstrated that she did
> not have anything but pure speculation, she instead
> decides to perpetrate an outrageous fraud upon the court
> by adding what are inherently unbelievable allegations to
> support claims which were implausible to begin with. . . .
>
> It's about as serious a matter as you are going to get in a
> courtroom.  And I am going to grant the defendant's
> motion to dismiss the claims with prejudice in their
> entirety. . . .
>
> [Y]ou have had every opportunity to present an honest
> case, . . . and instead of doing so you chose to perpetrate
> a fraud on the court.  And the result is this case is over[.]

*Id.* at 194-95.  On May 29, 2014, the District Court issued a written order, the

reasoning of which is set forth and analyzed in the sections below.  *Id.* at 196-99.

The Court granted PIN's motion to strike Zhang's newly-raised discrimination and

harassment claims, granted PIN's motion to dismiss Zhang's retaliation claims,

denied Zhang's motion for leave to amend, and dismissed Zhang's complaint with

prejudice.  *Id.*

## SUMMARY OF ARGUMENT

This is primarily a retaliation case premised on complaints Zhang allegedly made to PIN's HR Director on February 13, 2013.  The District Court properly dismissed these retaliation claims for several independently sufficient reasons:  (1) Zhang's allegation that she complained about race- or national origin-based discrimination or harassment, as opposed to a personal conflict with her supervisor, was too conclusory to state a claim, and the complaint also lacked plausibility in light of Zhang's description of the events in earlier filings; (2) even if Zhang had made a protected complaint, Zhang does not plausibly allege that she could have possessed an objectively reasonable belief that she had suffered discrimination or harassment; rather, her belief was wholly speculative and undermined by her other allegations describing her conflict with PIN; and (3) even if Zhang had made a protected complaint and possessed the required objectively reasonable belief, Zhang's allegation that her complaint was a but-for cause of her termination fails because the Supreme Court has rejected the notion that temporal proximity alone is sufficient to allege causation in this context, and because Zhang's own allegations reveal an obvious, alternative explanation for Zhang's termination.

The District Court correctly applied the principles of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in concluding that the complaint failed to state a plausible claim for relief.  And in

13

assessing the plausibility of the claim, the District Court appropriately considered Zhang's prior filings in state and federal court, which were properly subject to judicial notice, and the ways in which her own complaint gave reasons to believe that the claim was not plausible.  The Court also properly found implausible the new allegations that Zhang—facing dismissal with prejudice of her unsubstantiated retaliation claims—sought to make for the first time in February 2014, when those allegations were unmentioned in her original, 6,000-plus word Complaint One or her EEOC submission, both of which were filed less than a month after her termination in 2013, or in her attorney-drafted second complaint.  The new allegations were also at odds with her own original account of the nature of her alleged issues with her supervisor and co-worker.

In addition, the District Court properly exercised its discretion in striking Zhang's newly-raised discrimination and harassment claims in Counts I-III of Complaint Three (and subsequent complaints) because they exceeded the limited leave to amend that the Court had granted when it dismissed Complaint Two. Zhang does not even challenge the granting of the motion to strike in her argument section.  Further, these newly-raised claims would fail on the merits as well, both because they were not brought within 90 days of Zhang's receiving a right-to-sue letter from the EEOC, and because the key allegations are conclusory and implausible.

14

Appeal: 14-1544    Doc: 27    Filed: 10/06/2014    Pg: 23 of 67


Zhang also attempted to raise retaliation claims under Title VII's "participation clause," which similarly exceeded the leave that the District Court granted, and the District Court would have been within its discretion to strike those claims. The new retaliation claims also would fail on the merits and were properly dismissed because Zhang has not plausibly alleged that she suffered adverse action following any of the conduct that she contends was protected activity.

Finally, the District Court did not abuse its discretion in denying Zhang's motion for leave to amend because, among other things, the Court found that Zhang had acted in bad faith, Zhang had repeatedly failed to cure deficiencies in her complaint, and the proposed amendment would be futile.

In short, all aspects of the District Court's decision are supported by several, independently sufficient grounds. Zhang received multiple full, fair opportunities to present a plausible claim, and she had help from two different attorneys along the way. Not only did Zhang fail to come forward with a viable complaint, but she also modified her complaint in such a way that the District Court found she had attempted to perpetrate a fraud on the Court. As the District Court recognized, it is time to put this case to rest.

## ARGUMENT

I.    **The District Court Properly Granted PIN'S Motion To Strike Zhang's Discrimination and Hostile Work Environment Claims (Counts I-III), and Zhang Forfeited the Right To Challenge This Decision**

Complaint Two, which was Zhang's initial complaint in the instant action, raised three causes of action: retaliation in violation of Title VII, retaliation in violation of 42 U.S.C. § 1981, and tortious interference with contract. The District Court dismissed Zhang's tortious interference claim with prejudice, but dismissed Zhang's retaliation claims, Counts 1 and 2, without prejudice and granted Zhang "30 days to amend Counts 1 and 2." J.A. at 74.

Complaint Three began by acknowledging that the District Court's ruling granted leave specifically to amend the retaliation claims. *See id.* at 78. Nevertheless, Zhang not only re-raised her retaliation claims (Counts IV and V), but also attempted to raise three new claims: (1) discrimination in violation of Title VII (Count I); (2) discrimination in violation of Section 1981 (Count II); and (3) hostile work environment in violation of Title VII (Count III). The District Court properly granted PIN's motion to strike with respect to Counts I-III on the ground that the new claims exceeded the limited leave to amend. *See id.* at 197.

Zhang's brief to this Court fails to present any argument that the granting of the motion to strike with respect to Counts I-III was in error. In fact, the argument section of Zhang's brief is devoid of any reference to the District Court's striking

16

of Counts I-III. Zhang's only reference to the District Court's decision on Counts I-III is in her "Summary of Argument," where she states that "[t]he District Court erred in summarily dismissing these claims, which are based on the same facts as and are like and related to her retaliation claims." Br. at 16. This unsupported assertion does not suffice. "It is a well settled rule that contentions not raised in the argument section of the opening brief are abandoned." *United States v. Al-Hamdi*, 356 F.3d 564, 571 n.8 (4th Cir. 2004). Further, arguments are forfeited if they are not supported by "citation to legal authority." *Li v. Gonzales*, 405 F.3d 171, 175 n.4 (4th Cir. 2005). Accordingly, Zhang has forfeited her right to challenge the District Court's decision to strike Counts I-III.[5]

Any attempt to challenge the District Court's decision to strike Counts I-III would fail on the merits as well. This Court reviews a district court's ruling on a motion to strike pursuant to Rule 12(f) for abuse of discretion. *See Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.*, 227 F. App'x 239, 246 (4th Cir. 2007). A district court "enjoys liberal discretion," *Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000) (per curiam), and "decisions that are reasonable,

---

[5] Zhang refers to discrimination and harassment at various points in her brief, but in the context of her retaliation claims, rather than arguing that the Court erred in striking Counts I-III. *See, e.g.*, Br. at 29 (arguing that the allegations of discrimination and harassment "are sufficient to state a plausible claim that her belief that her complaints concerned practices unlawful under Title VII is objectively reasonable" for purposes of establishing retaliation).

17

that is, not arbitrary, will not be overturned," *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 480 (6th Cir. 2003).

When Zhang filed her first amended complaint in the instant action (Complaint Three), she could no longer amend her complaint as a matter of course. Fed. R. Civ. P. 15(a). Accordingly, she could amend only with PIN's written consent (which she did not obtain) or the Court's leave. At the January 17, 2014, hearing, the only leave that the District Court granted her was leave to amend her retaliation claims. J.A. at 74. It did not grant her leave to add new claims asserting discrimination or hostile work environment claims.

Because Zhang filed Counts I-III of Complaint Three (and repeated those counts in Complaint Four) without having obtained the Court's leave (or even having requested it), the Court was within its discretion to strike those counts pursuant to Rule 12(f). *See Cook v. Nationwide Ins. Co.*, 962 F. Supp. 2d 807, 818 (D. Md. 2013) (striking a complaint filed without leave after defendants moved to dismiss); *cf. Angles v. Dollar Tree Stores, Inc.*, 494 F. App'x 326, 329 (4th Cir. 2012) ("failing to request leave from the court when leave is required" deprives an amended complaint of legal effect).

For these reasons, PIN requests that the Court affirm the District Court's decision to strike Counts I-III.[6]

## II.   The District Court Properly Granted PIN's Motion To Dismiss Zhang's Retaliation Claims (Counts IV and V)

Title VII provides: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . [1] because he has opposed any practice made an unlawful employment practice by this subchapter, or [2] because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The provision includes an "opposition clause" and a "participation clause." *Glover v. S.C. Law Enforcement Div.*, 170 F.3d 411, 413 (4th Cir. 1999).

The elements of a retaliation claim, regardless of whether it is brought under Title VII or Section 1981, are "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 132 S. Ct. 1327 (2012); *see also Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 343-44 (4th Cir. 2006) (recognizing that retaliation claims brought under Title VII and Section 1981 are governed by the same legal principles).

---

[6] As discussed below, Counts I-III would fail for the additional reasons that, among other things, they are implausible and premised on allegations that were made in bad faith. *See infra* Part III.

19

Zhang relies on *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), for the proposition that she is not required to allege plausibly the elements of a retaliation claim. Br. at 45-47. This reliance is misplaced. *Swierkiewicz* held that a plaintiff bringing a *discrimination* claim under the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), need not specifically allege each element of the *McDonnell Douglas* prima facie case, because "if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case." *Swierkiewicz*, 534 U.S. at 510-11.

The elements of a retaliation claim are different from the elements of the *McDonnell Douglas* prima facie case for discrimination claims, which *Swierkiewicz* states are not essential to recovery on discrimination claims. The three elements of retaliation are all essential, and the Fourth Circuit "has not . . . interpreted *Swierkiewicz* as removing the burden of a plaintiff to allege facts sufficient to state all the elements of her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003).

Absent (1) protected activity, (2) adverse employment action, *and* (3) the requisite causal link between the two, actionable retaliation has not occurred. Zhang's complaint was required to allege facts sufficient to state all three elements. *See Bass*, 324 F.3d at 765; *Coleman*, 626 F.3d at 191 (affirming dismissal of

20

retaliation claim where complaint failed to "identify any protected activity by [plaintiff] that prompted the retaliation of which he complains").

Zhang also misstates the standard of review by asserting that "[d]ismissal is appropriate only if it appears that plaintiff could prove no set of facts that would entitle her to relief." Br. at 17. This language originated in *Conley v. Gibson*, 355 U.S. 41, 45 (1957). In *Twombly*, the Supreme Court retired the "no set of facts" standard, stating that it had been "questioned, criticized, and explained away long enough" and was "best forgotten . . . ." 550 U.S. at 562-63. *See Francis v. Giacomelli*, 588 F.3d 186, 192 n.1 (4th Cir. 2009) (the *Conley* standard has been overruled). Zhang's reliance on a standard that the Supreme Court has explicitly rejected underscores the weakness of her claims.

The correct standard of review is that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). This standard requires "more than a sheer possibility" that a defendant is liable. *Iqbal*, 556 U.S. at 678. It also means that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Moreover, a court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

21

Ruling on a motion to dismiss is "a context-specific task that requires the reviewing court to draw an its judicial experience and common sense." *Id.* at 679. The Court may consider matters that are "properly subject to judicial notice," and a court is not required to accept the truth of allegations that are inconsistent with such material. *See Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002). In addition, courts may consider whether "the complaint itself gives reasons to believe" that its claims are not plausible. *Twombly*, 550 U.S. at 568.

Applying these standards, the District Court correctly found that Zhang's retaliation claims suffer from multiple flaws, any one of which warrants dismissal. Taken as a whole, Zhang's complaint does not plausibly allege (1) that Zhang complained to PIN about unlawful discrimination or harassment before she was terminated; (2) that (even if Zhang made such a complaint) she had an objectively reasonable belief that she was suffering from such discrimination or harassment; or (3) that (even if Zhang made such a complaint and had such a reasonable belief) her termination would not have occurred "but for" the complaint.

## A.    The District Court Properly Considered Zhang's Prior Filings in Assessing the Plausibility of Zhang's Allegations

As an initial matter, the District Court did not err in considering matters outside of the complaint—namely, Zhang's prior filings in federal and state court—in assessing the plausibility of Zhang's current allegations. It is well-established that district courts may rely on matters that are properly subject to

22

judicial notice in ruling on motions to dismiss. *See, e.g.*, *Philips v. Pitt Cnty.*

*Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *Veney*, 293 F.3d at 730. The

Supreme Court has even noted that "*courts ordinarily examine . . .* documents

incorporated into the complaint by reference, and matters of which a court may

take judicial notice" in ruling on motions to dismiss. *Tellabs, Inc. v. Makor Issues*

*& Rights, Ltd.*, 551 U.S. 308, 322 (2007) (emphasis added). It is also well-

accepted that complaints filed in state and federal court are properly subject to

judicial notice. *See, e.g.*, *Lolavar v. de Santibanes*, 430 F.3d 221, 225 n.2 (4th Cir.

2005) ("We take judicial notice of the records of a court of record."); *Blue Tree*

*Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369

F.3d 212, 217 (2d Cir. 2004) (holding that courts "may also look to public records,

including complaints filed in state court, in deciding a motion to dismiss").

Yet Zhang attempts to suggest that courts are never permitted, under any

circumstances, to "stray beyond the four corners of the complaint," Br. at 23-24,

and the inquiry must be "grounded *entirely*" in the allegations in the complaint, *id.*

at 25.[7] But this contention is contradicted by the precedent above, and it is

irreconcilable with the position she took before the District Court in this action

when she stated: "Plaintiff does not disagree with the Defendant that, in making

_____

[7] Zhang allows only one possible exception, stating that "the only purpose for
which evidence outside the complaint might be admissible on a motion to dismiss
is to establish or refute the Court's jurisdiction." Br. at 25-26.

23

the assessment of whether a plaintiff's complaint states a cause of action under

F.R.C.P. 12(b)(6), the court may also consider certain types of prior documented

allegations as part of this context-specific inquiry." Civ. No. 13-1309, Docket No.

10 at 4. As Zhang previously acknowledged, her prior filings were properly

considered. Her unsupported contention now that the Court must simply ignore

what she previously alleged in this same litigation, regardless of alterations in her

account, only underscores that the prior filings fatally undermine her claims.[8]

The contrast is readily seen in Zhang's allegation, first made in Complaint

Three two days after she terminated her first attorney's engagement, that Wilhite,

at unspecified times, in unspecified places, and to unspecified persons (but "in

front of" Zhang), made derogatory comments about Chinese people. J.A. at 81.

Had these comments actually been made, Zhang certainly would have mentioned

them in the 6,000-plus word Complaint One, or in her EEOC submission, both

filed less than one month after her termination. The omission is particularly

striking given the extent to which Zhang catalogued with laborious specificity the

various ways in which Wilhite allegedly mistreated her. The notion that Zhang

---

[8] Zhang also contends that previous versions of a complaint are a "legal nullity." Br. at 55-56. But this simply means that *legal* deficiencies in an earlier complaint are not a basis to dismiss an amended complaint. *See, e.g.*, 6 Wright & Miller, Fed. Prac. & Proc. § 1476 (3d ed.). It does not mean she may freely change her factual allegations from one version of a complaint to the next while the court is prohibited from exercising its common sense and considering the plausibility of her allegations in light of prior filings. *See, e.g.*, *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1324-25 (Fed. Cir. 1998).

would include allegations such as Wilhite once having had an "irritated facial expression," once questioning her "madly," and once "quickly dismissing" her idea, but not include the bombshell that Wilhite allegedly made overtly derogatory comments about Chinese people, flunks the plausibility test.[9]  Further, had these comments actually been made and somehow inexplicably omitted from Zhang's exhaustive recital in Complaint One, Zhang's first attorney undoubtedly would have realized their significance and included them in Complaint Two.

Zhang also added, for the first time in Complaint Three, the dramatic assertion that PIN filed a *criminal* charge against her.  J.A. at 86-87, 95, 98.  Zhang purported to know that (1) the alleged charge was filed on "the second day after the complaint was sent to PIN"; (2) the alleged charge was "denied at the very beginning"; (3) the alleged charge was denied by the "Arlington magistrate office"; and (4) the Arlington magistrate office denied the charge "[s]ince the charge was unwarranted with no evidence and proof."  J.A. at 86-87, 98.

After PIN filed its Rule 11 motion, Zhang's attorney attempted in proposed Complaint Five to remove these allegations, implicitly recognizing their inaccuracy and implausibility.  J.A. Ex. at 119.  Zhang's response to PIN's

---

[9] Additionally, the EEOC intake questionnaire that Zhang completed asked "what happened to you that you believe was discriminatory" and "why do you believe these actions were discriminatory."  J.A. Ex. at 22.  In her detailed response, Zhang said nothing of any derogatory comments by Wilhite or anyone else.  J.A. Ex. at 25-33.

25

sanctions motion claimed that Zhang's "intent was to convey that Defendant threatened her with criminal prosecution," not that PIN actually filed a criminal charge. Civ. No. 13-1309, Docket No. 41 at 1. But this explanation is impossible to square with the level of detail Zhang provided regarding the fictional criminal charge.

Zhang's proposed Complaint Five sought to remove all the allegations about the Arlington magistrate office and replace them with the contradictory (but equally implausible) story that PIN (through its outside counsel) only threatened Zhang with a criminal charge. J.A. at 145. Zhang's omission of any reference to a criminal charge in Complaint Two (which was filed long after the criminal charge was supposedly filed), her introduction of the criminal charge allegation in Complaint Three two days after she terminated her first attorney's services, her repeating of the criminal charge allegation in Complaint Four, her request to delete the criminal charge allegation after it became the subject of a Rule 11 motion, and her untenable explanation that what she meant to allege was not that a criminal charge had actually been filed against her—despite her richly detailed account of the filing and denial of the charge—but only that one had been threatened, all show that the criminal charge allegation was not merely implausible, but fabricated.

Even before *Twombly* and *Iqbal*, it was recognized that an amended complaint is properly rejected when a plaintiff pleads "sham" facts in a

26

"transparent attempt to conform the facts to the requirements of the cause of action." *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1324 (Fed. Cir. 1998). This is exactly what has occurred here. Just as in *Bradley*, Zhang's first complaint was written "a year earlier and thus represented a fresher recollection" than the discrepant allegations in her third complaint. *Id.* at 1324. And, just as in *Bradley*, Zhang's first complaint, which exceeded 6,000 words, "clearly constituted a comprehensive statement of Plaintiff's allegations and claims." *Id.* at 1325.

Although the District Court did not explicitly "strike" the allegations as sham, and although it was entitled to reject them as implausible, it is apparent that Zhang's new allegations were a bad faith attempt to conform the facts to what she perceived the requirements of the cause of action to be. The District Court stated that Zhang had attempted to "perpetrate an outrageous fraud upon the court by adding what are inherently unbelievable allegations" to her complaint. J.A. at 194. In its order, the Court stated that it "may discount the credibility of such a highly implausible claim, made for the first time in the third version of Plaintiff's complaint over 14 months after the events in question took place." *Id.* at 198 n.1. In light of the context and circumstances, the District Court had more than sufficient grounds to reject Zhang's new allegations.[10]

---

[10] Zhang was not subjected to a "Catch-22" when the Court asked her to add facts to her complaint and then deemed her new allegations implausible. Br. at 56-67. There is a world of difference between fleshing out a complaint with additional plausible details relating to what it has alleged and asserting in an amended

**B.    Zhang Did Not Plausibly Allege That She Engaged in Protected Activity by Complaining about Unlawful Discrimination**

The first independently sufficient reason that Zhang's retaliation claim fails is that, to have engaged in protected activity, an employee must have "opposed [a] practice made an unlawful employment practice" by Title VII.  42 U.S.C. § 2000e-3(a).  As the District Court recognized, Zhang's complaint failed to set forth sufficient factual matter plausibly showing that she engaged in protected activity when it stated that Zhang had not "alleged that she informed any of her superiors at PIN about any specific instances of race or national origin-based discrimination, aside from her general and conclusory allegation that she 'lodged a complaint of discrimination and hostile working environment.'"  J.A. at 198.

Zhang's retaliation claim centers on a conversation she allegedly had with PIN's HR Director on February 13, 2013, which, beginning with Complaint Three, Zhang described as follows:

> On or around February 13, 2013, the Plaintiff met with PIN's Human Resources Director, Ms. Talbot and lodged a complaint of discrimination and hostile working environment based upon the Plaintiff being Chinese/Asian and the Plaintiff also opposed PIN decision to hold her offer letter due to unwarranted "communication problem" was discriminatory itself.

---

complaint completely new and different allegations, especially where the absence of the allegations from multiple, prior filings was not explained and appears to be inexplicable.

28

> The plaintiff also stated she was doing PIN HR EEO
> training online and what PIN did was actually against
> EEO rules and regulations.

*Id.* at 84.

Zhang's allegation that she "lodged a complaint of discrimination and hostile working environment based upon Plaintiff being Chinese/Asian" is no more than a "formulaic recitation" of a required element of her retaliation claim, which does not suffice to state a claim. *Twombly*, 550 U.S. at 555. Similarly, her allegations that PIN's decision "was discriminatory" and "against EEO rules and regulations" are quintessential "labels and conclusions." *Id.* Beyond these conclusory statements, Zhang has not identified even the barest details regarding what she actually said to PIN's HR Director to put PIN on notice regarding the nature of her complaints.

Zhang cannot escape the inadequacy of her allegations by noting that she filed Complaint Three *pro se*. Zhang was represented by counsel when she filed Complaint Two, and Complaint Two was no less conclusory. *See* J.A. at 41 ("On February 13, 2013, the Plaintiff met with PIN's HR Director and lodged a complaint of discrimination and hostile work environment against MW and a co-worker based upon the Plaintiff being Chinese/Asian."). Accordingly, Zhang's claim is insufficient to survive a motion to dismiss.

29

In addition to being too conclusory to state a claim, Zhang's allegations are implausible in light of Zhang's prior filings. Complaint One described the February 13 meeting, at length, as follows:

> On February 13, 2013, during the meeting between Ms. Zhang and Ms. Talbot, the HR director, Ms. Zhang addressed the issues about Ms. Wilhite and Ms. McDaniel for the first time and hope her hostile working environment would become better. Instead listening to Ms. Zhang's, Ms. Talbot impatiently responded that Ms. Zhang was reported that Ms. Zhang was too self-confident and too forceful at work. Ms. Zhang responded that it was unwarranted, malicious claims and Ms. Zhang suggested that Ms. Talbot should talk to many coworkers on daily basis, other business analysts, architect, developers, and QAs whom Ms. Zhang worked with nicely. Ms. Talbot said she talked to people, but she didn't say how many she talked to (just one or two, or 10, 20 people), and whom (just Ms. Wilhite and Ms. McDaniel or many others) she talked to. Ms. Talbot also said the company couldn't convert Ms. Zhang into permanent employee as planned while still keeping her as consultant. Ms. Zhang requested that Ms. Talbot should do investigation about Ms. Zhang's hostile working environment regardless the unfair and unsatisfactory job status.

*Id.* at 18-19.

This detailed description of the February 13 conversation and the events leading up to it contained not a single word about discrimination, national origin, or race; and the remainder of Complaint One plainly reveals the reason for this omission: the "issues" and "hostile work environment" about which Zhang allegedly complained did not involve national origin or race. Rather, Complaint

30

One specifically attributed Zhang's conflict with Wilhite and McDaniel to their laziness, pride, and professional jealousy. *See id.* at 14-18. And Complaint One's exhaustive account of Zhang's alleged mistreatment confirms that any "hostility" she experienced did not involve her race or national origin. *Id.* While Complaint One recounted numerous alleged ways in which Wilhite and McDaniel slighted Zhang, it offered no indication that race or national origin played any role in the conflict. *Id.* Rather, Zhang's extensive description of the origin and nature of her conflict with Wilhite and McDaniel demonstrates that the "hostile working environment" that Zhang mentioned to PIN's HR Director on February 13 involved her perceived personal conflict with Wilhite and McDaniel, not her legally protected characteristics.

The plausibility of Zhang's claim that she complained of discrimination on February 13 is further rebutted by an email she sent to Wilhite's supervisor, Simon Storm, on February 12, describing the "issues" that she had encountered. That email, which was incorporated in the complaint by reference, *id.* at 82, 83,84, also shows that Zhang was not complaining about discrimination or harassment, but was merely raising the same personal conflicts that she discussed at length in Complaint One. *See* J.A. Ex. at 65-66.

Zhang's prior account indicates that her alleged complaint on February 13 involved a conflict she believed was caused by professional jealously and

31

spitefulness, not race or national origin.  Zhang's conclusory allegation that she "lodged a complaint of discrimination and hostile working environment," J.A. at 84, which is highly implausible in light of her initial complaint, does not suffice. The District Court properly considered Zhang's prior filings and the conclusory nature of her present complaint and fairly concluded that Zhang had not sufficiently alleged that she had engaged in protected activity that could support a retaliation claim under Title VII or Section 1981.

### C. Zhang Did Not Plausibly Allege that She Possessed an Objectively Reasonable Belief that PIN Had Acted Unlawfully

The second ground on which Zhang's retaliation claims fail is that, even if Zhang had plausibly alleged that she complained about unlawful discrimination on February 13, 2013, the District Court properly held that she "failed to demonstrate that she *reasonably*, in good faith, believed that the practices she opposed were unlawful and discriminatory." J.A. at 197 (emphasis in original).[11]  For an employee's complaint to an employer to amount to protected activity, the employee "must have an objectively reasonable belief in light of all the circumstances that a Title VII violation has happened or is in progress." *Jordan*,

---

[11] Zhang suggests that the District Court erroneously required her to prove her case at the motion to dismiss stage because the Court stated that she "failed to demonstrate" the required reasonable, good faith belief.  Br. at 27.  Whether the Court required a "showing" of entitlement to relief (the word used in Rule 8) or that the complaint "demonstrate" a plausible basis for relief (the word used by the Court) is immaterial.  It is apparent from the substance of the Court's order that the Court properly analyzed whether Zhang's complaint contained plausible allegations and did not inappropriately require Zhang to "prove" her allegations.

458 F.3d at 341; *see also Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001) (rejecting retaliation claim because "[n]o reasonable person could have believed that the . . . incident . . . violated Title VII's standard").

As an initial matter, the objective reasonableness of Zhang's belief must be judged based on what Zhang could have known on February 13, 2013, at the time of her alleged complaint to PIN's HR Director. Accordingly, comments allegedly made when PIN later terminated Zhang or in subsequent statements to the EEOC that Zhang saw months later—such as statements to the EEOC by her co-worker Todd Karl relating to her communication skills in English—are not pertinent. Br. at 32-33.

If Zhang is alleging that she was aware of a statement by Karl criticizing her English communication skills before February 13, 2013, *see* Br. at 32, her allegation is demonstrably false. Zhang said nothing in Complaint One, her EEOC submission, or Complaint Two about being aware of any such statement. On the contrary, in her EEOC Intake Questionnaire, filed on March 18, 2013, she listed Karl as a witness who would say that "Zhang is hard working, with strong dedication to work, high performing, *and good communicator*." J.A. Ex. at 32 (emphasis added). Zhang's submission to the EEOC listing Karl as a witness who would say that she was a "good communicator" is irreconcilable with the allegation that she was aware before she allegedly lodged her complaint with PIN

33

on February 13, 2013, that Karl thought her communication skills might be affected by a "language barrier." The only plausible explanation is that after seeing Karl's EEOC statement in late 2013, following the EEOC's dismissal of her complaint, Zhang attempted to use Karl's statement to mold her allegations to the requirements of a retaliation claim.

Additionally, even if Zhang had known of Karl's alleged complaint prior to February 13, Zhang has offered no support for her contention that one remark by a non-supervisor could support an objectively reasonable belief that she was being subjected to unlawful harassment or discrimination. *See Clark Cnty. Sch. Dist.*, 532 U.S. at 270-71 (discussing the requirement that harassment be "severe or pervasive" and holding that no reasonable person could believe that a single comment violated the applicable standard); *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("[O]ffhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'").[12]

The remainder of Zhang's allegations fail to establish with any plausibility that she possessed the required objectively reasonable belief. Zhang has offered

---

[12] PIN does not concede that Zhang has accurately portrayed Karl's EEOC statement. However, even if Zhang were accurately characterizing Karl's alleged statement, which she is not, Zhang's allegations pertaining to the alleged statement cannot support her purported objectively reasonable belief for the reasons stated above.

nothing beyond the fact that she was the only Chinese employee who reported to Wilhite to support her contention that she reasonably believed she had suffered discrimination or harassment because of her race or national origin.[13]

Zhang's conclusory claim that she was treated unfavorably compared to other employees (whom she often does not even allege were white and not Asian like herself) is not sufficient to raise her claim above a purely speculative level. *See, e.g.*, *Coleman*, 626 F.3d at 190-91 (dismissing Title VII claim because, "although [plaintiff]'s complaint conclusorily allege[d] that [plaintiff] was terminated based on his race" and that plaintiff "was treated differently than whites," it failed to "assert facts establishing the plausibility" of those allegations).

In *Bass*, the complaint, like Zhang's, was "full of problems she experienced with her co-workers and supervisors," but the court concluded that the allegations "d[id] not seem to have anything to do with . . . race," despite the allegation that similarly situated Caucasian males were treated more favorably.  324 F.3d at 765. The harassment claim failed because "the facts she alleges merely tell a story of a workplace dispute regarding her reassignment and some perhaps callous behavior by her supervisors," which the Court held was insufficient.  *Id.*  Zhang's complaint offers nothing more.

---

[13] For the reasons above, *supra* Subpart II.A, the District Court correctly gave no credence to Zhang's allegation that Wilhite made derogatory comments about Chinese people.

Similarly, in *Hawkins v. PepsiCo, Inc.*, the plaintiff alleged that her supervisor "did not adequately inform [her] of her responsibilities," "criticized or laughed at [her suggestions]," and "failed to acknowledge [her] input," while treating her Caucasian peers more favorably. 203 F.3d 274, 277 (4th Cir. 2000). Such allegations showed "nothing more than a routine difference of opinion and personality conflict with her supervisor." *Id.* at 276. The Court explained that these "disagreements and misunderstandings are ordinary occurrences in a workplace setting," and refused "to impute a racial character to them based simply on [plaintiff's] conjecture." *Id.* at 281. Zhang's belief that she suffered race- or national origin-based discrimination or harassment was likewise supported by no more than "speculation" and "conclusory allegations of racism." *Id.*[14]

Zhang's brief makes much of her recent allegation that she was denied a certain alleged training opportunity that "every developer in PIN who reported to Ms. Wilhite" received. Br. at 32. However, Zhang has not alleged that PIN engaged *her* as a *developer*. Rather, PIN engaged Zhang as a "user interface consultant" whose role was to identify issues and "evaluate the user experience and usability of the web pages, *which had been developed*." J.A. at 79, 80 (emphasis

---

[14] Although *Hawkins* was decided on summary judgment, the case demonstrates that Zhang cannot plausibly allege an objectively reasonable belief that she was a victim of discrimination where the belief is based purely on conjecture. That Zhang's original account alleges a personal conflict makes Zhang's purported objectively reasonable belief even less plausible.

36

added). The allegation that developers received different training thus could not support an objectively reasonable belief that she suffered discrimination, even if she had alleged that the developers who allegedly received the training were white and not Asian like herself (which she also did not allege).

In sum, even if Zhang's supervisor and co-worker actually "conspired" against her and treated her unfairly with respect to deadlines, training, or inclusion in meetings, such conduct would not support an objectively reasonable belief that unlawful discrimination or harassment had occurred. *See, e.g.*, *Bonds v. Leavitt*, 629 F.3d 369, 384 (4th Cir. 2011) ("Title VII is not a general bad acts statute."). The District Court correctly concluded that Zhang failed to plead facts making it plausible that any belief she had about unlawful discrimination was objectively reasonable.[15]

---

[15] While a plaintiff must possess both a subjective, good faith belief and an objectively reasonable belief, the District Court focused on the objective reasonableness requirement. *See* J.A. at 197 (noting that Zhang failed to establish that she "*reasonably*" believed that she was opposing an unlawful practice (emphasis in original)). The Court did not, as Zhang suggests, "substitute its own judgment as to whether her complaint was made with subjective good faith." Br. at 29. That said, Zhang's prior filings describing the personal nature of her grievance also call into question whether she even subjectively believed she had faced unlawful discrimination.

**D.    Zhang Did Not Plausibly Allege that Purported Protected Activity Was the But For Cause of Her Termination**

Zhang's retaliation claims also fail on causation. This element requires "that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013).

As the District Court recognized, Zhang's own allegations show that PIN had "concerns about her ability to communicate and work effectively within the culture of the office" before February 13, 2013, when Zhang allegedly complained to HR. J.A. at 199. In the face of an "obvious alternative explanation" for her termination, it is implausible that purposeful, invidious retaliation qualifies as a but-for cause. *See Iqbal*, 556 U.S. at 682. Moreover, allowing Zhang's claim to proceed because of the temporal proximity between her purported protected activity and her termination would directly contravene *Nassar*.

Zhang acknowledges that PIN's CAO called her into a meeting "at the beginning of February, 2013" ("[j]ust a few days" after January 28) and explained several concerns that PIN had with Zhang's performance. J.A. at 83-84. And Zhang's original complaint demonstrated that her communication problems and her conflicts with her supervisors continued after this meeting in early February. For example, Zhang alleged that her supervisor did not understand concepts that were "nursery level in the development world," and Zhang admitted that she sent

38

an email that may have "unintentionally hurt [her supervisor]'s super ego and

power play." *Id.* at 16.

Then, according to Complaint One, when Zhang complained about her

conflicts with her supervisors, PIN's HR Director said that she was seen as "too

self-confident and too forceful at work." *Id.* at 18. Zhang's response was to assert

that the comments were "unwarranted, malicious claims." *Id.* Zhang was later

terminated and allegedly told that her termination "was due to [her] 'culture

problem.'"[16] *Id.* at 85.

This series of allegations simply does not support a plausible claim that any

protected activity by Zhang on February 13 was the "but for" cause of her

termination. Rather, Zhang's allegations show that she was fitting in poorly at

work, had been warned of that fact, then began then complaining about her own

treatment (but without raising allegations of discrimination on the basis of national

origin or race. She was eventually let go when her communication problems were

not resolved. Zhang alleges that she "felt strongly that her termination was based

upon discrimination and/or retaliation," J.A. at 85, but this conclusory allegation

does not suffice to make the claim plausible. *Iqbal*, 556 U.S. at 678. Because

---

[16] Zhang's brief says that "culture" as used in the alleged statement is "is nothing more than a euphemism for national origin and race discrimination." Br. at 33. However, given the detailed allegations outlining her clashes with her supervisors, the only plausible interpretation of the alleged statement is that it was a reference to PIN's corporate culture, that is, a culture of professionalism and respect.

Zhang makes only a conclusory allegation of retaliatory motive to contradict her more detailed allegations showing other reasons for her termination, the District Court properly dismissed her retaliation claim.

Zhang challenges the District Court's conclusion on a number of unpersuasive grounds. First, Zhang apparently concedes that the only basis for her causation claim is "temporal proximity," that is, the fact that she lodged her complaint on February 13 and was terminated on February 25, but she contends that this temporal proximity is sufficient to allege causation. Br. at 38-39, 50-51. However, Zhang relies exclusively on authority that predates the Supreme Court's recent decision in *Nassar*, which rejected a "lessened causation test" for retaliation cases and instead held that "traditional principles of but-for causation" applied. 133 S. Ct. at 2533. The Court explained the problems that might arise if retaliation claims could proceed based solely on temporal proximity:

> Consider . . . the case of an employee who knows that he or she is about to be fired for poor performance . . . . To forestall that lawful action, he or she might be tempted to make an unfounded charge of . . . discrimination; then, when the unrelated employment action comes, the employee could allege that it is retaliation. If respondent were to prevail in his argument here, that claim could be established by a lessened causation standard, all in order to prevent the undesired change in employment circumstances.

*Id.* at 2532. Such a sequence of events matches the timeline in this case, as the District Court recognized.

40

Since *Nassar* was decided, the Fourth Circuit has held that "temporal proximity alone is not sufficient to establish that [a plaintiff's] engagement in protected activity was a 'but for' cause of" adverse employment action. *Staley v. Gruenberg*, __ F. App'x __, 2014 WL 2535403, at *2 (4th Cir. June 6, 2014). Given *Nassar*, Zhang cannot plausibly allege causation simply by noting that PIN terminated her employment twelve days after her purported protected activity, especially when the purported protected activity itself came *after* Zhang had been warned about her behavior, giving her reason to suspect that she might soon be terminated.[17]

Zhang also contends that the District Court "improperly accepted PIN's assertions as true when it found 'ample evidence that [PIN's reasons for terminating her employment] were based on her performance as an employee.'" Br. at 24. But, in fact, the District Court relied on *Zhang's* allegations, not any assertions by PIN; and those allegations showed that PIN had already informed Zhang of its concerns regarding her performance before February 13. J.A. at 198-99. As the Court also found, Zhang's pending complaint contained only conclusory allegations that her termination was retaliatory, while presenting a

---

[17] The Court need not hold that temporal proximity is never sufficient to defeat a motion to dismiss. Rather, on the facts here, where the complaint indicates obvious alternative explanations for the adverse employment action, causation is not plausibly alleged merely based on a twelve-day gap between the purported protected activity and the termination.

41

much more detailed and apparent explanation for her termination. Faced with such an "obvious alternative explanation," the District Court properly determined that it was implausible that invidious retaliation was a but-for cause of Zhang's termination. *Iqbal*, 556 U.S. at 682.

Next, Zhang contends that the District Court erred in considering the duration of her employment, referring to the Court's statement that "the duration of [Zhang]'s employment with PIN and the timeline of events" rendered her causation claim implausible. J.A. at 197. However, Zhang offers no authority for this proposition. *See* Br. at 40. To the contrary, Zhang's short, rocky tenure and the fact that PIN warned her about her behavior prior to her purported protected activity provide crucial context that the Court properly considered in assessing the plausibility of Zhang's causation allegations. *Iqbal*, 556 U.S. at 679.

Zhang also argues that PIN has asserted inconsistent explanations for terminating Zhang, which she says shows that her termination was, in fact, retaliatory. Br. at 41-44. Yet virtually all of the allegedly inconsistent explanations obviously relate to the same overarching concerns regarding Zhang's interpersonal skills. [18] The supposedly inconsistent alleged explanations include that Zhang had a "culture problem," that Zhang was "not a good fit," that Zhang

---

[18] The one alleged explanation that differs from all the others, namely that PIN told TrustedQA only that it had no more work for Zhang and did not describe her performance issues, would have been to Zhang's advantage, not her detriment.

was "too confident and too aggressive,"[19] that Zhang had a "communication problem," and that Zhang "annoyed her coworkers."  Br. at 42-43.  What is notable about these various explanations is not that they are different, but that they express, in different words, a common theme.[20]

For all of these reasons, Zhang failed to allege plausibly that her complaint to PIN's HR Director was a but-for cause of her termination.[21]  Thus, this is one of three independently sufficient grounds on which this Court may affirm the dismissal of Zhang's retaliation claims.

### E.    Zhang's Additional Retaliation Claims Exceeded the Limited Scope of the Leave to Amend and Also Fail as a Matter of Law on the Merits

Complaint Three attempted for the first time to broaden substantially Zhang's retaliation claims by raising claims under Title VII's "participation

---

[19] Zhang's suggestion that she was a victim of sex stereotyping by her female supervisor Wilhite, her female co-worker McDaniel, PIN's female HR Director, and PIN's female CAO, Br. at 42, is at best irrelevant, because none of Zhang's five complaints asserts sex discrimination.

[20] Zhang appears to place special emphasis on one justification allegedly advanced by PIN that involved Zhang's qualifications.  *See* Br. at 42, 44.  Even if this allegation could somehow salvage Zhang's claim, which it cannot, it was not included in her current complaint, only in Complaint Five.  Further, Zhang's brief adds improper and irrelevant gloss to this alleged justification by stating that Zhang "was assigned to PIN's Technical Development Team" and that "PIN's CAO cannot identify the name of th[e] Marketing team member" who allegedly questioned Zhang's qualifications.  Br. at 42.  Neither of these allegations appears in the portion of the appendix Zhang cites.  *See* J.A. at 160.

[21] Zhang's suggestion that the District Court erroneously applied the summary judgment standard rather than the motion to dismiss standard because the Court referred to a "reasonable jury," Br. at 40-41, is simply an attempt to manufacture a ground for reversal that ignores the substance of the Court's analysis.

43

clause" as well as its "opposition clause." These claims are properly rejected both because they exceed the limited scope of the leave to amend that the District Court granted and because they fail as a matter of law on the merits.

At the hearing on January 17, 2014, the District Court dismissed Zhang's "opposition clause" retaliation claims arising from the alleged meeting of February 13, 2013, and specifically indicated the areas of the claim that needed to be bolstered with additional facts. J.A. at 72-73. These areas included "whether [Zhang] could have an objectively reasonable belief that she was being discriminated against" when she allegedly complained on February 13, "the inadequacy of the notice" that Zhang was complaining of unlawful discrimination, and "whether [the facts] rise to a level of adverse action" (of which the protected activity plausibly was a but-for cause). J.A. at 73. The Court granted leave to amend in this manner in part because Zhang's counsel had proffered additional facts that could be added to an amended complaint, J.A. at 73, but none of the proffered facts related to a "participation clause" claim. J.A. at 69-70; *see also* Civ. No. 13-1309, Docket No. 10 at 8-10.

Despite the limited nature of the leave that the District Court granted, Complaint Three raises "participation clause" retaliation claims based on (1) Zhang's printing out EEOC forms *after* she was terminated; and (2) Zhang's sending a draft complaint to PIN on March 14, 2013, demanding $1.3 million

44

dollars and a response by the following day, and informing PIN that she also intended to file an EEOC charge. J.A. at 95; J.A. Ex. at 68, 83. None of Zhang's prior filings gave any indication that she might attempt to premise a retaliation claim on any alleged protected activity other than her February 13 complaint to PIN's HR Director. Zhang's original *pro se* complaint, Complaint One, contained no discussion of the alleged facts that now form the basis of her "participation clause" claims, J.A. at 21-25, and her initial complaint in this action, Complaint Two in the litigation, likewise included retaliation claims that invoked only the "opposition clause." *See* J.A. at 45-48.

Although the District Court did not explicitly address Zhang's newly-raised participation-clause claims, the Court would have been within its discretion to strike these claims because they exceeded the leave that the Court had granted, just as the Court struck Zhang's newly-raised discrimination and harassment claims. *See* J.A. at 197; *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("[W]e may affirm a judgment for any reason appearing on the record.").

In addition to being filed without leave, Zhang's participation-clause retaliation claims fail on the merits. Again, although the District Court did not explicitly address the merits of Zhang's participation clause claims, this Court "may affirm a district court's dismissal of a complaint under Rule 12(b)(6) on any

45

basis fairly supported by the record." *In re Total Realty Mgmt., LLC*, 706 F.3d 245, 250 (4th Cir. 2013) (internal quotation marks omitted).

As for allegedly printing out EEOC forms, Zhang does not explain how this conduct fits within the definition of protected activity, which requires that she "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). By simply printing out forms, Zhang did not "ma[k]e a charge," nor did she thereby "testif[y], assist[], or participate[] in any manner *in an investigation, proceeding, or hearing*." *Id.* (emphasis added).[22]

Even if printing out EEOC forms amounted to protected activity, Zhang suffered no adverse action after printing the forms. The "adverse action" element is satisfied if "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Zhang had *already* been terminated and given one month's notice when she printed out the forms. After Zhang printed out voluminous materials from her work computer, which Complaint Five admits included PIN emails, J.A. at 144, PIN allegedly

---

[22] Participating in EEO training similarly does not fall under this definition. Accordingly, to the extent Zhang contends that participating in EEO training amounts to protected activity, *compare* Br. at 48, *with* J.A. at 95, the claim fails.

asked her to leave immediately rather than working for one more month. However, Zhang admits that PIN paid her for the entire additional month. *Id.* at 88. Zhang offers no authority for the proposition that a reasonable employee who has already been terminated would be dissuaded from making a charge of discrimination because she is asked not to work for the final month, but receives pay for the month she does not work.

Zhang's remaining "participation clause" claim, which involves her sending a draft complaint to PIN on March 14, also fails to allege adverse action. Zhang contends that PIN took adverse action by "intimidating and threatening Zhang on March 15, 2013," but the actual content of PIN's communication to Zhang, which is part of the record, contradicts Zhang's characterization. PIN's letter to Zhang stated that PIN "takes allegations of discrimination very seriously," that PIN would "review the allegations," and that PIN would respond substantively by March 21. J.A. Ex. at 86. Such a response would obviously not "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 68.

PIN's letter to Zhang also referred to Zhang's Consultant Confidentiality and Intellectual Property Agreement, stating that "[f]rom your email correspondence, it appears that you have already breached this Agreement," which prohibited the removal of PIN emails or other PIN documents, and asking Zhang to

47

"promptly return . . . any and all documents or information currently in your possession that constitute Confidential Information of the Company, including, without limitation, any emails relating to the Company retained by you." J.A. Ex. at 87. PIN's counsel included this request in the letter because Zhang had stated in her email the previous day that she "also had all the emails back up all my allegations." *Id.* at 68.

Notwithstanding Zhang's characterization of PIN's letter as "threatening" and "intimidating," and notwithstanding Zhang's denial that she had taken any PIN documents, Br. at 49-50, PIN's letter to Zhang does not amount to adverse action that could support a retaliation claim under Title VII or Section 1981.[23] PIN had every right to remind this departed consultant of her obligations under the confidentiality agreement after Zhang's email suggested she possessed confidential information and to request that she return any such materials.[24]

Further, a reasonable employee who has already drafted a charge and a complaint would not be dissuaded from pursuing the action because the employer reminds the employee of her obligations under a confidentiality agreement and

---

[23] Although Zhang's latest complaint contains the implausible allegation that PIN's counsel threatened to file a criminal charge against her, Zhang does not rely on that allegation in her brief to establish that PIN took adverse action in response to her sending PIN a draft complaint on March 14.

[24] If a company in PIN's position could not request the return of confidential materials in such circumstances, an employee or consultant could nullify his or her contractual obligations of confidentiality simply by complaining of discrimination before departing with documents.

48

asks the employee to return any materials she possesses in violation of the agreement. Supporting that conclusion, Zhang's response to PIN explained her belief that she had not violated the agreement and stood by her intention to file suit. J.A. Ex. at 99.[25]

For the reasons above, the dismissal of Zhang's retaliation claims based on Title VII's "participation clause" should be affirmed, both because the claims exceeded the leave that the District Court granted for Zhang to amend, and because the claims did not plausibly allege the required elements.

## III. The District Court Properly Denied Zhang's Motion for Leave To File a Second Amended Complaint

Finally, Zhang contends that the District Court erred in denying her motion for leave to file a second amended complaint. This Court reviews a district court's ruling on a motion for leave to amend for abuse of discretion. *See Keller v. Prince George's Cnty.*, 923 F.2d 30, 33 (4th Cir. 1991). "A district court abuses its discretion by resting its decision on a clearly erroneous finding of a material fact, or by misapprehending the law with respect to underlying issues in litigation." *Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 112 (4th Cir. 2013) (internal quotation marks omitted).

---

[25] Zhang not only was not dissuaded, but filed her complaint on Monday morning, the next business day after she received the letter. J.A. at 11.

49

Rule 15(a) provides that leave to amend should be granted freely "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, leave to amend should not be granted where there is "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment," or the amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (holding that leave to amend is properly denied when "there has been bad faith on the part of the moving party," "the amendment would be prejudicial to the opposing party," or "the amendment would be futile").

The primary basis for Zhang's argument is her assertion that the Court did not state the reasons for its ruling. Zhang's own perfunctory brief in support of her motion for leave to amend, less than two pages in length, provided little to address. Civ. No. 13-1309, Docket No. 48.[26] Nonetheless, Zhang's protestation that the record contains no evidence of the Court's justification for its ruling is belied by the transcript of the May 9, 2014 hearing, during which the Court expressed its view that Zhang acted in bad faith, that Zhang repeatedly failed to cure deficiencies in her complaint, and that an amendment would be futile. *See* J.A. at 194-95. As explained below, consideration of the relevant factors in light of "the

---

[26] Zhang also elected not to reply to PIN's response brief. *See* J.A. at 36.

particular circumstances presented in this case," *Scott*, 733 F.3d at 119, demonstrates that the District Court was well within its discretion in denying Zhang's motion for leave to amend.[27]

## A.    Bad Faith

A district court is within its discretion in denying a motion for leave to amend where it finds bad faith on the part of the party seeking leave. *See Foman*, 371 U.S. at 182; *Laber*, 438 F.3d at 426. Zhang does not argue that she acted in good faith, but rather argues that "the Court did not find that Zhang was acting in bad faith." Br. at 53. Yet, the District Court stated on the record in open court that Zhang had decided "to perpetrate an outrageous fraud upon the court." J.A. at 194. If attempting "to perpetrate an outrageous fraud upon the court" is not "bad faith," it is difficult to imagine what bad faith might require. The Court obviously had an "apparent or declared reason" and decided in accordance with it. *Foman*, 371 U.S. at 182.

The District Court's finding that Zhang acted in bad faith would amount to an abuse of discretion only if it were "clearly erroneous." *Scott*, 733 F.3d at 112. In this case, the finding is fully supported by the record. First, the Court acted

---

[27] Zhang's reliance on *Scott* is misplaced. Although this Court found an abuse of discretion in *Scott*, the decision hinged largely on the fact that "a dramatic shift in the law" had occurred after the original complaint was filed, warranting significant amendments to the complaint. 733 F.3d at 199 (Keenan, J., concurring). Further, the plaintiffs in *Scott* "obtained new information about [the defendant] after the original complaint was filed," *id.*, which is not the case here.

51

properly in considering Zhang's prior filings in assessing the plausibility of her allegations. *See supra* Subpart II.A. Second, the record supports the Court's rejection as implausible, if not fabricated, the allegation that Wilhite made derogatory comments about Chinese people and Chinese restaurants; and the record shows that she also fabricated the allegation that PIN's counsel filed a criminal charge against her in the Arlington magistrate's office. *See id.* Accordingly, it was not an abuse of discretion for the Court to find that Zhang acted in bad faith, and this finding provides ample justification, by itself, for the Court's denial of Zhang's motion for leave to amend.

### B.   Repeated Failure To Cure the Complaint's Deficiencies

The District Court also did not abuse its discretion in denying leave to amend because it properly found that Zhang had repeatedly failed to cure deficiencies in her complaint. Zhang makes much of the fact that she had amended her complaint only once in this action and that she was proceeding *pro se* when she filed the complaint at issue. Br. at 51-53. However, the "amended complaint" is actually the *third* complaint Zhang had filed against PIN; her correction of the complaint at issue (which she filed without leave) is the *fourth*; and the proposed second amended complaint would have been the *fifth*. On these facts, it was not clearly erroneous for the District Court to find that Zhang had repeatedly failed to come forward with a viable complaint.

52

Additionally, Zhang was represented by counsel when she filed Complaint Two, her initial complaint in this action, she was represented by counsel in the weeks leading up to her filing Complaint Three, and she is currently represented by new counsel who submitted the proposed Complaint Five. In other words, Zhang is anything but a prototypical *pro se* plaintiff. And even if she were, an incurable complaint is not immunized from dismissal simply because the plaintiff is *pro se*. *McLean v. United States*, 566 F.3d 391, 400-01 (4th Cir. 2009). Although a plaintiff's *pro se* status sometimes militates in favor of applying less stringent technical standards to a complaint, Zhang has received ample assistance from counsel in this action.

## C.    Prejudice

Undue prejudice to the opposing party is yet another factor that favors denying leave to amend. *See Foman*, 371 U.S. at 182. To date, PIN has filed and fully briefed three motions to dismiss Zhang's claims. The first became moot after Zhang voluntarily dismissed her first action after the motion was briefed and she had obtained a continuance. The District Court granted the second motion to dismiss and allowed Zhang leave to amend her retaliation claims, and the District Court granted the third and dismissed Zhang's claims with prejudice. The proposed amended complaint revises Zhang's allegations yet again. Zhang's contention that we are currently "at such an early stage of the litigation," Br. at 53,

53

is difficult to square with the fact that Zhang filed her initial complaint in state court more than 18 months ago and the ensuing litigation has accounted for 87 docket entries in federal district court alone.  J.A. at 1-4, 30-37.  Permitting yet another amendment, which would have been the fifth version of Zhang's complaint, would cause even more prejudice to PIN.

### D.    Futility

Finally, in addition to the factors above, the District Court's denial of Zhang's motion for leave to amend was not an abuse of discretion because Zhang's proposed amendment would be futile.  Zhang contends that the proposed amended complaint cannot be considered futile because the District Court did not use the word "futility," but the District Court's statements on May 9 make clear that the District Court believed that any potential amendment would be futile.  J.A. at 194 ("I have bent over backwards to allow Ms. Zhang the opportunity to come forward with anything beyond pure speculation about what happened in her position with PIN and to demonstrate that there was retaliation or harassment.").  This Court need not reach the issue of futility because ample other grounds exist to support the District Court's denial of leave to amend.  However, if the Court reaches the issue, it should conclude that the District Court did not abuse its discretion.

Zhang's discrimination and hostile work environment claims are futile both because they are untimely and because they fail to state a plausible claim for relief.

54

As for timeliness, a plaintiff has 90 days to bring a civil action against a defendant after the EEOC provides notice of his or her right to sue. *See* 42 U.S.C. §2000e-5(f)(1). Here, the EEOC issued Zhang's right to sue letter on August 27, 2013, meaning that the 90-day period expired on November 25, 2013. J.A. at 146. Thus, Zhang's initial complaint in this action, filed in October 2013, was timely. However, after the District Court dismissed the complaint without prejudice, Zhang attempted to bring two new Title VII claims (Counts I and III of the amended complaint) on February 14, 2014.

Zhang made an informed decision, while represented by counsel, not to assert these claims when she filed her initial complaint in this action in October 2013. She even had the benefit of considering PIN's motion to dismiss, filed on November 18, 2013, before the 90 days expired, and still decided not to assert these claims. Zhang cannot bring these new claims more than 90 days after the EEOC issued a right to sue letter. *See Angles*, 494 F. App'x at 329 (referring to "the general rule that a Title VII complaint that has been filed but then dismissed without prejudice does not toll the 90-day limitations period"). Accordingly, Zhang's new Title VII claims would be futile.

Further, the simple fact remains that nowhere does Zhang allege in more than a conclusory way that she was terminated because of her race or national origin. Indeed, the fact that PIN engaged Zhang's services in November 2012

55

while fully aware of her race and national origin, and then considered making her an offer in late January 2013, makes it inherently implausible that PIN treated her poorly or terminated her services because of her race or national origin in February 2013.  As this Court has stated, "in cases where . . . the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer."  *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991).  For the same reasons that Zhang could not have reasonably believed that she suffered unlawful mistreatment in connection with her retaliation claims, *see supra* Subpart II.C, Zhang also cannot state a plausible discrimination claim.  *See, e.g.*, *Simpson v. Welch*, 900 F.2d 33, 35 (4th Cir. 1990) (affirming dismissal of Title VII and Section 1981 discrimination claims where complaint made only "conclusory allegations of discrimination and harassment").

Similarly, Zhang's proposed amended complaint is futile with respect to harassment.  Zhang has not set forth sufficient facts to allege plausibly that any of her treatment was because of her race or national origin, as opposed to her combative relationship with her superiors and her communication problems.  *See Bass*, 324 F.3d at 765.  Additionally, even assuming the truth of Zhang's factual allegations (including those that were fabricated), she has not alleged sufficiently "severe or pervasive" activity to demonstrate an "abusive atmosphere," as opposed

to simply "a workplace dispute" and "some perhaps callous behavior by her superiors." *Id.*[28]

## CONCLUSION

For the reasons above, PIN respectfully requests that the Court affirm the District Court's ruling in its entirety.

## ORAL ARGUMENT

PIN contends that the present appeal does not warrant oral argument.

Respectfully submitted,

/s/ Thomas S. Williamson Jr.
Thomas S. Williamson Jr.
Eli K. Best
COVINGTON & BURLING LLP
1201 Pennsylvania Ave, NW
Washington, DC 20004-2401
Phone:  (202) 662-6000
Fax:  (202) 662-6291
twilliamson@cov.com; ebest@cov.com

*Attorneys for defendant Promontory Interfinancial Network, LLC*

DATED:  October 6, 2014

---

[28] Zhang's proposed amended complaint would be futile with respect to retaliation as well because it is materially indistinguishable from the retaliation claims in Zhang's current complaint, which PIN has already addressed.

57

## CERTIFICATE OF COMPLIANCE

I certify the following:

1.      This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 13,751 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14pt Times New Roman.

/s/ Thomas S. Williamson Jr.
Thomas S. Williamson Jr.

## CERTIFICATE OF FILING AND SERVICE

I certify that on October 6, 2014, I will electronically file the foregoing document using the Court's CM/ECF system, which will then send a notification of such filing to all counsel of record, including Thomas F. Hennessy (th@virginiawage.com).  I further certify that on October 6, 2014, I will dispatch the required copies of the foregoing document to a third-party commercial carrier, to be delivered to the Office of the Clerk of Court on October 7, 2014.

/s/ Thomas S. Williamson Jr.
Thomas S. Williamson Jr.